[Cite as *Wells Fargo Bank, N.A. v. Daniels*, 2011-Ohio-6555.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| WELLS FARGO BANK, N.A, TRUSTEE, | : | APPEAL NOS. C-110209 |
|  |  | C-110215 |
| and | : | TRIAL NO. A-1002604 |
|  | : | *O P I N I O N.* |
| U.S. BANK NATIONAL ASSOCIATION, TRUSTEE, | : |  |
| Plaintiffs-Appellees, | : |  |
| vs. | : |  |
| MATTHEW C. DANIELS | : |  |
| and | : |  |
| TIMOTHY S. BAIRD, | : |  |
| Defendants-Appellants. | : |  |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  December 21, 2011

*Miller Canfield Paddock & Stone, P.L.C.*, and *Paul E. Perry*, for Plaintiffs-Appellees,

*Freund, Freeze & Arnold, Neil F. Freund, Wayne E. Waite, Jennifer K. Nordstrom,* and *Michelle L. Burden*, for Defendant-Appellant Matthew C. Daniels,

*Barron, Peck, Bennie & Schlemmer* and *Steven C. Davis*, for Defendant-Appellant, Timothy Baird.


Please note:  This case has been removed from the accelerated calendar.

**DINKELACKER, Presiding Judge.**

{¶1}   Defendants-appellants Matthew C. Daniels and Timothy S. Baird appeal from a decision granting summary judgment in favor of plaintiffs-appellees, Wells Fargo Bank, N.A., and U.S. Bank National Association (collectively "the banks"). We find no merit in their assignments of error, and we affirm the trial court's judgment.

### I.   Facts and Procedure

{¶2}   In 2003, Column Financial, Inc., loaned $11,775,000 to Hauck Holdings Tennessee, Ltd., ("Hauck"). The loan was evidenced by two notes, one for $11,100,000 ("note A") and one for $675,000 ("note B"). A mortgage on a shopping center secured both notes. Subsequently, Column Financial assigned note A to Wells Fargo and note B to U.S. Bank.

{¶3}   In 2004, Kenwood Shoppes Two, LLC, ("Kenwood") purchased the shopping center from Hauck and assumed the two loans. Daniels and Baird were described as "managers" of Kenwood. The lenders conditioned their consent to Kenwood's assumption of the loans upon Daniels and Baird agreeing to personally guarantee the loans under the same terms as a previous guarantor. The assumption agreement between Hauck and Kenwood referred to Daniels and Baird collectively as "New Guarantor." Daniels and Baird also separately signed indemnity and guaranty agreements.

{¶4}   The guaranties were "springing recourse" guaranties, meaning that the guarantors only became liable if Kenwood defaulted on the loan and certain specified events occurred. Specifically, the guaranty agreements stated, "[Guarantor] acknowledges that phrase (Y) in section 1.5 of each of the Notes describes circumstances wherein the entire indebtedness evidenced by the Note and the other obligations of Borrower under the Loan Documents would become fully recourse to

Borrower. If such circumstances should occur then [guarantor] shall additionally be directly and primarily liable, on a joint and several basis, for the entire indebtedness evidenced by the Notes and for all of Borrower's obligations under the Loan Documents[.]"

{¶5} Section 1.5 of the notes provided that Kenwood's filing for bankruptcy was an event that would trigger liability by the guarantors. It stated, "Notwithstanding anything to the contrary or any of the other Loan Documents * * * all such indebtedness evidenced by the Note and other obligations of Borrower under the Loan Documents shall be deemed fully recourse to Borrower in the event that * * * a receiver, liquidator or trustee of Borrower shall be appointed * * * or if any petition for bankruptcy, reorganization or argument pursuant to federal bankruptcy law, or any similar federal or state law shall be filed by, is consented to or acquiesced in by Borrower or if any proceeding for the dissolution or liquidation of Borrower shall be instituted by the Borrower."

{¶6} In January 2009, Kenwood defaulted on the loans. To stop a foreclosure, GF Capital Real Estate Investment IV, LLC, ("GF Capital") allegedly Kenwood's manager, filed bankruptcy on Kenwood's behalf. But at the time of the filing, GF Capital's management agreement with Kenwood had expired.

{¶7} The banks filed a complaint seeking to enforce Daniels's and Baird's guaranties. They subsequently filed a motion for summary judgment. The trial court rejected Daniels's and Baird's argument that the guaranties were not enforceable for the reason that GF Capital had lacked the authority to file for bankruptcy on behalf of Kenwood because its management agreement with Kenwood had expired, and because Daniels and Baird had not consented to or authorized the bankruptcy filing. The court granted summary judgment in favor of the banks. Noting that the banks had sought judgment only for the unpaid principal balance of each loan, it entered

judgment for Wells Fargo in the amount of $10,275,707.73 and for U.S. Bank in the amount of $673,065.45. This appeal followed.

{¶8}  Daniels and Baird each present a single assignment of error, contending that the trial court erred in granting summary judgment in favor of the banks. They both argue that the bankruptcy filing did not trigger the springing recourse provision because they did not initiate, authorize, consent, or in Baird's case, even know about the filing, and because GF Capital lacked the authority to file for bankruptcy on behalf of Kenwood. They further argue that the banks knew about both of these problems and that, by invoking the springing recourse provisions, the banks impaired the guarantors' surety status and violated their duty of good faith and fair dealing. These assignments of error are not well taken.

## II.  Interpretation of Guaranty Agreement

{¶9}  The interpretation of a written instrument is, in the first instance, a matter of law for the court. If it is clear and unambiguous, the court need not go beyond the plain language of the agreement to determine the parties' rights and obligations. Instead, it must simply give effect to the contractual language. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 53, 544 N.E.2d 920; *Blair v. McDonagh*, 177 Ohio App.3d 262, 2008-Ohio-3698, 894 N.E.2d 377, ¶48. But if the provisions of a contract are ambiguous, an issue of fact exists, making summary judgment inappropriate. *Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio, Inc.* (1984), 15 Ohio St.3d 321, 322, 474 N.E.2d 271; *Fifth Third Bank v. Ducru Ltd. Partnership*, 1st Dist. No. C-050564, 2006-Ohio-3860, ¶14.

{¶10}  "A guarantor, like a surety, is bound only by the precise words of his contract. Other words cannot be added by construction or implication, but the meaning of the words actually used is to be ascertained in the same manner as the meaning of similar words used in other contracts. * * * The rule that a guarantor is

held only by the express words of his promise does not entitle him to demand an unfair and strained interpretation of those words, in order that he may be released from the obligation which he has assumed." *LaSalle Bank Natl. Assn. v. Belle Meadows Suites, LP*, 2nd Dist. No. 23766, 2010-Ohio-3773, ¶22, quoting *G.F. Business Equip., Inc. v. Liston* (1982), 7 Ohio App.3d 223, 224, 454 N.E.2d 1358.

{¶11}   In this case, the plain language of the guaranty agreements and the related agreements provided that Daniels and Baird would become liable for the entire indebtedness upon the occurrence of certain events, including the borrower filing a petition for bankruptcy. The agreements did not require the guarantors' consent to, authorization of, or even knowledge about the filing of the bankruptcy petition in order to trigger their liability. Consequently, it is irrelevant whether Daniels and Baird consented or agreed to the bankruptcy. See *111 Debt Acquisition, LLC v. Six Ventures, Ltd.* (Feb. 18, 2009), S.D.Ohio No. C2-08-768.

### III.  Impairment of Suretyship Status

{¶12}   A guarantor can defend against enforcement of a guaranty where the creditor has impaired the guarantor's suretyship status. But a guarantor can waive his or her suretyship defenses. *O'Brien v. Ravenswood Apts., Ltd.*, 169 Ohio App.3d 233, 2006-Ohio-5264, 862 N.E.2d 549, ¶22. Ultimately, a guarantor's liability is governed by the terms used in the contract. Id. at ¶23. "If a guaranty's terms are clear and unambiguous, a court may not construe it to have another meaning." Id. In this case, the contract terms clearly and unambiguously provided that upon the bankruptcy filing, the guarantors became liable for the entire indebtedness.

{¶13}   Further, the Ohio Supreme Court has held that a creditor not in possession of the collateral is not liable for its unjustified impairment. *Buckeye Fed. Sav. & Loan Assn. v. Guirlinger* (1991), 62 Ohio St.3d 312, 581 N.E.2d 1352, syllabus. It stated, "We find that the most equitable and commonsense approach is to require

the party in possession of the collateral to carry the responsibility to conserve it. Public policy will not be served by requiring a creditor out of possession to supervise and, probably, second-guess the debtor or the guarantor in its handling of the collateral in its rightful possession." Id. at 315. Since the banks did not have possession of the collateral in this case, the shopping center, Daniels's and Baird's argument that the banks impaired their suretyship status must fail.

### IV. Duty of Good Faith

{¶14}   We also find no validity to Daniels's and Baird's claims that the banks had violated their duty of good faith. We have held a number of times that every contract contains an implied duty of good faith and fair dealing. *Blair*, supra, at ¶43; *Stephen Business Ent., Inc. v. Lamar Outdoor Advertising Co.*, 1st Dist. No. C-070373, 2008-Ohio-954, ¶19. That duty implies "honesty and reasonableness in enforcement of a contract" and "faithfulness to an agreed common purpose and consistency with the justified expectations of the other party*." Stephen Business Ent.*, supra, at ¶19.

{¶15}   That duty does not mean that a party is not entitled to enforce a contract or that it must put the other party's interests above its own. *Ed Schory & Sons, Inc. v. Francis*, 75 Ohio St.3d 433, 443-444, 1996-Ohio-194, 662 N.E.2d 1074. "Firms that have negotiated contracts are entitled to enforce them to the letter, even to the great discomfort of their trading partners, without being mulcted for lack of good faith." Id. at 443, quoting *Kham & Nates Shoes No. 2, Inc. v. First Bank of Whiting* (C.A.7, 1990), 908 F.2d 1351, 1357-1358.

{¶16}   In this case, the guarantors were sophisticated businessmen. They signed a contract that expressly stated that they would be liable in the case of the borrower filing bankruptcy. They cannot escape the terms of that contract by

claiming a lack of good faith. See *Myers v. Evergreen Land Dev., Ltd.*, 7th Dist. No. 07 MA 123, 2008-Ohio-1062, ¶27-28; *O'Brien*, supra, at 39.

### V. Damages

{¶17}   Finally, Daniels and Baird argue that issues of fact exist regarding damages. They contend that the reorganization plan filed in the bankruptcy proceedings had been confirmed and had been in repayment for approximately one year. They argue that the banks are not entitled to double recovery and must provide a set-off for the payments received, and that the proper set-off cannot be determined until the reorganization plan is complete.

{¶18}   The record demonstrates that Kenwood is making ongoing payments under the reorganization plan. We agree that the banks are not ultimately entitled to double recovery. But following the guarantors' logic, the trial court would not be able to enter judgment until the bankruptcy plan was complete, which could be many years in the future.

{¶19}   The banks presented the affidavit of Monique Holland, a vice president of the company that was responsible for administering both loans for the banks. She stated that the unpaid balances on the loans were $10,275,707.73 and $673,065.45. The guarantors did not submit any evidence on the issue of damages. They cannot sit back and simply assert that no one knows what the total damages will be. They presented no evidence of any double recovery or that they were entitled to any set-off.

### VI. Summary

{¶20}   We find no issues of material fact. Construing the evidence most strongly in the guarantors' favor, we hold that reasonable minds could have come to but one conclusion – that Matthews and Baird were liable for payment of the notes under the guaranty agreements. The banks were entitled to judgment as a matter of

law, and the trial court did not err in granting summary judgment in their favor. See *Temple v. Wean United, Inc.* (1977), 50 Ohio St.3d 317, 327, 364 N.E.2d 267; *Riverhills Healthcare, Inc. v. Guo*, 1st Dist. No. C-100781, 2011-Ohio-4359, ¶12. Consequently, we overrule Daniels's and Baird's assignments of error and affirm the trial court's judgment.

Judgment affirmed.

**HILDEBRANDT** and **HENDON**, **JJ.**, concur.

Please Note:

The court has recorded its own entry this date.