[Cite as *Sola Professional Group, L.L.C. v. Mallek*, 2022-Ohio-3041.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

SOLA PROFESSIONAL GROUP, LLC,  :

    Plaintiff-Appellant,  :

                                 No. 111181

    v.  :

HALA MALEK,  :

    Defendant-Appellee.  :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART AND MODIFIED IN PART
**RELEASED AND JOURNALIZED:** September 1, 2022

---

Civil Appeal from the Parma Municipal Court
Case No. 20CVF02675

---

### *Appearances:*

Laribee & Hertrick, LLP and Marc R. Hertrick, *for appellant*.

Hala Melek, *pro se.*

CORNELIUS J. O'SULLIVAN, JR., J.:

{¶ 1} Plaintiff-appellant, Sola Professional Group, LLC, appeals a $220 damages award after it sued pro se defendant-appellee, Hala Malek, for breach of contract in relation to a studio space appellee rented in appellant's salon franchise.

After a thorough review of the law and the facts, we modify the trial court's judgment.

{¶ 2} Appellant owns multiple franchises of Sola Salons and operates a franchise of its salon in Strongsville. Appellant rents individual studio spaces for licensed cosmetologists to provide beauty care services. Appellee contracted with appellant to lease a space in its salon. The terms of the agreement were that appellee would pay appellant a $400 "damage deposit" plus $220 per week for 24 months as a "license fee" ("rent").

{¶ 3} The contract was to expire on October 14, 2021, but due to the impact of the COVID-19 pandemic, appellee lost much of her business and was unable to afford her rent payment. According to appellee, Kristin, appellant's leasing agent, approached her one day and told her appellant could help find someone to take over her lease. Relieved, appellee gave appellant notice that she intended to vacate her space. Appellee paid rent in full through August 1, 2020. According to appellant, however, appellee was responsible for six weeks of payment of the license fee, until September 13, 2020, when the new tenant began paying rent. In addition, appellant alleged that appellee made modifications to the space for which it incurred $1,000 in restoration work, $150 for locksmith services, and $100 for cleaning.

{¶ 4} Appellant filed suit against appellee in Parma Municipal Court, claiming $1,770 in damages. Appellee filed a counterclaim in the amount of $3,414, alleging that appellant wrongfully locked her out of studio and took her personal property. The matter proceeded to a bench trial before a magistrate, after which the

magistrate issued a decision finding for the appellee on appellant's claims and finding for the appellant on appellee's counterclaim. Specifically, the magistrate found:

> The evidence is clear that Defendant advised Plaintiff that she wanted to terminate her lease. On July 30, 2020, Plaintiff notified Defendant, via text message, that "Your studio has been rented." Defendant paid rent through August 1, 2020. On August 5, 2020, Defendant went to the property to retrieve her personal property and the locks had been changed by the Defendant. Defendant's representatives acknowledged that the locks had been changed but denied taking any of Defendant's personal property.

{¶ 5} Appellant filed written objections to the magistrate's decision. In a decision dated November 24, 2021, the trial court sustained appellant's objections in part and found: "Defendant paid rent up to July 30, 2020. Defendant constructively remained at the premises until approximately August 5, 202[0]. As a result, Plaintiff is entitled to rent in the amount of $220.00." The court affirmed the rest of the magistrate's findings.

{¶ 6} In its sole assignment of error, appellant claims that the trial court erred in failing to calculate the proper damages award in favor of appellee.

**Standard of Review**

{¶ 7} Appellant urges this court to review the trial court's decision de novo. Under Civ.R. 53, the trial court must conduct an independent review of the facts and conclusions contained in the magistrate's report and enter its own judgment. *Dayton v. Whiting*, 110 Ohio App.3d 115, 118, 673 N.E.2d 671 (2d Dist.1996). The

trial court, therefore, conducts a de novo review in examining a magistrate's decision.

{¶ 8} This court has previously held that our review of a trial court's decision to adopt a magistrate's decision is for an abuse of discretion. *AC Asset, L.L.C. v. Mitchell*, 8th Dist. Cuyahoga No. 110818, 2022-Ohio-1763, ¶ 26, citing *Kapadia v. Kapadia*, 8th Dist. Cuyahoga No. 94456, 2011-Ohio-2255; *see also In re K.V.*, 8th Dist. Cuyahoga No. 108441, 2019-Ohio-5126, ¶ 10. This court has also held, however, that referral to a magistrate should not circumvent the applicable standard of review in a contract matter. *Schalmo Builders, Inc. v. Zama*, 8th Dist. Cuyahoga No. 90782, 2008-Ohio-5879, ¶ 14; *see also Stephan Business Ents. v. Lamar Outdoor Advertising Co.*, 10th Dist. Franklin No. C-070373, 2008-Ohio-954. In *Schalmo Builders*, this court reviewed a ruling on a motion to enforce a settlement agreement and held that "[b]ecause a ruling on a motion to enforce settlement is an issue of contract law, Ohio appellate courts 'must determine whether the trial court's order is based on an erroneous standard or a misconstruction of the law. The standard of review is whether or not the trial court erred.'" *Id.*, quoting *Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 660 N.E.2d 431 (1996). Thus, the appropriate standard of review in contract cases was whether the trial court erred as a matter of law. *Schalmo Builders* at *id.*

{¶ 9} In this case, the question before the court is whether the trial court erred as a matter of law in construing the rental agreement— the contract— between the parties in awarding appellant $220; therefore, our review is de novo.

**Prayer for Relief**

{¶ 10} As an initial matter, we note that the prayer for relief in appellant's complaint requested damages in the amount of $1,700. At trial and on appeal, appellant claims damages in the amount of $2,750. Appellant claims the increase in damages is warranted for attorney fees, lost rent, restoration, and cleaning fees.

{¶ 11} Appellant never moved to amend its complaint to request additional damages. In *Doan Gardens, Ltd. v. Beverly*, 8th Dist. Cuyahoga No. 56551, 1989 Ohio App. LEXIS 2341 (June 15, 1989), this court reviewed whether a trial court erred in limiting its award to the amount prayed for in the complaint, notwithstanding the appellant-landlord's failure to amend the complaint to reflect the additional damages sought against the appellee-tenant. In affirming the trial court's judgment, this court noted that the appellant never amended its complaint to reflect an increased demand for money damages:

> Civil Rule 54(C) provides that a party is not limited to the relief claimed in the pleadings, except on a judgment by default or when a money judgment is sought and awarded. Under Civ.R. 54(C), a demand for a money judgment must be amended not later than seven days before trial. Amendment is available to a complaining party seeking to increase a demand for money damages without leave of court or the approval of the other party, but not later than seven days before trial. The specific time constraints set forth in Civ.R. 54(C) regarding the amendment of a claim for money damages are controlling over the more general provisions of Civ.R. 15(A), which allows for amendment to conform to the evidence.

(Internal citations omitted.) *Doan Gardens, Ltd.* at 3.

{¶ 12} In this case, appellant likewise never amended its complaint to increase its demand for damages. Thus, appellant did not comply with Civ.R. 54(C) and the trial court was limited in the amount it could award appellant to $1,700.

**Contract**

{¶ 13} Next, we consider whether the trial court erred in awarding appellant $220 in damages.

{¶ 14} The contract in this case provided in pertinent part:

> 5. "<u>Damage Deposit</u>." Upon execution of this Agreement, Licensee shall pay two weeks Damage Deposit in the amount of $400. The Damage Deposit shall be refunded to Licenses within thirty (30) days of the termination of this Agreement and or any renewals, provided however, Licensee is not in default of any obligations herein and has not damaged the Studio or Leased Premises in any manner. SOLA will deduct any damage and/or default damages from said Damage Deposit.
>
> * * *
>
> 13. <u>Default</u>. The occurrence of any one or more of the following shall constitute a material default and breach of the Agreement by Licensee:
>
> a. Failure by Licensee to timely make the License Fee any payment required to be made by Licensee hereunder.
>
> * * *
>
> h. Violation of any other term and condition of this Agreement.
>
> 14. <u>Remedies.</u> On the occurrence of any default by Licensee, SOLA may, at any time thereafter, with or without notice or demand and without limiting SOLA in the exercise of any right or remedy provided by law:
>
> a. Terminate this Agreement in which case Licensee shall surrender possession of the Studio and the keys to SOLA, and deliver the Studio in broom clean condition within 48 hours of the time notice of such termination is given. If Licensee fails to surrender such Studio, SOLA

may take possession of the Studio, and all supplies, material and tools of the Licensee located in the Leased Premises shall be deemed abandoned. SOLA may dispose of such property in accordance with applicable Ohio law. SOLA shall be entitled to recover from Licensee all damages incurred by SOLA by reasons of Licensee's default.

\* \* \*

Miscellaneous Provisions.

d. \* \* \* Licensee also agrees to pay for any and all studio modifications that may have been done during the term of this agreement or extensions to restore the studio/studios back to original condition.

{¶ 15} Franchise owner Daniel Hoeck testified that appellee terminated her lease as of August 1, 2020, and, per the contract, only had 48 hours to remove her items. Appellant changed the locks when she did not remove her items within that time frame. According to appellant, appellee breached her contract by terminating her lease and since the new tenant did not start paying rent until September 13, 2020, appellee was liable for six weeks of rent, even though the new tenant occupied the space rent free from September 1 until September 13, 2020. In addition, appellant argues, appellee is liable for modifications made to the space before she moved in.

{¶ 16} Appellee testified that Kristin, appellant's leasing agent who had an office in the salon, saw that appellee did not have many customers and approached appellee, offering to help find someone to take over appellee's space and lease. It is uncontested that appellant paid rent through July 30, 2020. On July 30, 2020, Hoeck texted appellant and stated, "Hala your studio has been rented! Please call me to discuss the details of the transfer when you get time[.]"

{¶ 17} Appellee responded, stating she would do her best to move out in a week or so and asked when she would get her damage deposit back. Appellant informed appellee that they needed to "come to an agreement" because she owed for modifications made to her space:

> Hoeck: For this move to be complete, we'll need to both sign a document spelling out each party's responsibility. For example, per your lease you're responsible to restore the studio to its original condition and pay those expenses prior to the work beginning. I'm getting a bid to put together by my maintenance * * *.

{¶ 18} On August 1, 2020, Hoeck texted appellee and told her that she owed $1,080 to restore her studio to its original condition. Appellee expressed her surprise, responding that she did make changes to the studio after she moved in, was not responsible for work appellant did to the space prior to her moving in, and did not have money to pay for restoration work. She informed Hoeck she would be out of her space as soon as possible and would pay rent through that time.

{¶ 19} When appellee went to the salon on August 5, she was locked out of her space and had to call a locksmith. She also filed a police report, claiming that many of her expensive supplies were missing. Appellant conceded that they changed the locks, locking appellee out of her space. On the same day, Hoeck texted appellee, "Hala, have the cops call me * * * I know you have a locksmith there. I'm going to have my attorney chew you up and spit you out. You are a worthless excuse of a human being, nothing but a user."

{¶ 20} The magistrate found that appellee advised appellant that she wanted to terminate her lease, appellant notified appellee that her studio was rented as of

July 30, 2020, and appellee paid rent through August 1, 2020. The magistrate further found that when appellee went to the salon on August 5, 2020, to retrieve her personal property, appellant had changed the locks. The magistrate concluded that appellee could not show that appellant took any of her personal property.

{¶ 21} The trial court, in reversing the magistrate's decision in part, awarded damages to appellant in the amount of $220, finding that appellee had retained possession of the space from August 1 to August 5, 2020.

{¶ 22} Considering the above and based on our de novo review, we find that the trial court did not err in awarding damages in the amount of $220 to appellant. Appellant, through its agent, offered to find someone to take over appellee's lease and then informed appellee on July 30, 2020, that her space had been rented. Under the plain language of the parties' contract, appellee was only liable for modifications made "during the term of this agreement or extensions," not for modifications made prior to her tenancy.

{¶ 23} Appellant has asked us to properly calculate damages. Pursuant to Section 5 of the parties' agreement, appellee was entitled to the return of her $400 damage deposit. Although appellant argues that it used the deposit to pay back rent, the trial court found that appellant was only entitled to $220 in damages. Having been relieved of her contractual obligation, appellee is entitled to the return of her $400 damage deposit.

{¶ 24} The assignment of error is sustained. The trial court's judgment is modified in part to show that while appellant is entitled to $220 in damages, appellee is to be awarded $400 in damages.

{¶ 25} Judgment affirmed in part, modified in part.

It is ordered that appellant and appellee pay their own costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Parma Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
CORNELIUS J. O'SULLIVAN, JR., JUDGE

LISA B. FORBES, P.J., and
MARY J. BOYLE, J., CONCUR